IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARCUS STROUD,  :  <br>    Plaintiff  : <br> : | No. 1:22-cv-0515 |
| v.  : <br> : | (Judge Rambo) |
| WARDEN USP LEWISBURG,  : <br> *et al.*,  : <br>    Defendants  : | |

## MEMORANDUM

Plaintiff Marcus Stroud, who was previously incarcerated at the United States Penitentiary in Lewisburg, Pennsylvania (USP Lewisburg), initiated the above-captioned *pro se* action under 42 U.S.C. § 1983. (Doc. No. 1.) He asserts constitutional tort claims against the warden of USP Lewisburg and six unidentified USP Lewisburg correctional officers. (*Id.* at 2-4.) Because Stroud's complaint fails to state a claim upon which relief may be granted, the Court will dismiss this action under 28 U.S.C. § 1915A(b)(1) but will grant Stroud leave to amend some of his claims.

**I.    BACKGROUND**

Stroud filed the instant civil rights case in April 2022. (Doc. No. 1.) He alleges that, during prison transfers from FCI Loretto to USP Lewisburg and from USP Lewisburg to MDC Brooklyn, he was handcuffed using a "Blackbox" mechanism, which is "a small black box which sits over the handcuffs restricting

movement of the wrists, causing discomfort, and prevent[ing] an inmate from picking the lock." (*Id.* ¶¶ 14-16, 22-25.) According to Stroud, of the nine total inmates on the bus from FCI Loretto to USP Lewisburg—all of whom were designated low- or minimum-security risks—only he and two other inmates were "Blackboxed," and this was specifically because they were sex offenders. (*Id.* ¶¶ 17-19, 25.) On the bus transfer from USP Lewisburg to MDC Brooklyn, Stroud recalls that, of the twelve total inmates, nine were low-security prisoners and only two of those low-security inmates (Stroud and another sex offender) were Blackboxed. (*Id.* ¶¶ 22-25.)

Stroud alleges that the USP Lewisburg correctional officers on the bus crew "conspired among themselves" to intentionally Blackbox the sex offenders so that their prior offenses would be exposed to the other prisoners on the bus. (*Id.* ¶¶ 37, 39.) Stroud maintains that these prison officials knew of "the danger and stigmatization sex offenders face while in prison" but chose to Blackbox and single out the sex offenders anyway. (*Id.* ¶¶ 38, 41.) Stroud avers that this practice of Blackboxing low-security sex offenders during transport to reveal their identities has been occurring for "at least 6 months." (*Id.* ¶¶ 28, 43-44.)

Stroud claims that Defendants' actions constituted "state created danger," "failure to supervise," equal protection violations, and civil conspiracy. (*Id.* ¶¶ 36-56.) He attempts to bring these claims under 42 U.S.C. § 1983. (*Id.* ¶ 1.)

Initially, the Court recognizes that all Defendants—either identified or unidentified—are prison officials at USP Lewisburg, which is a federal facility. Stroud, therefore, cannot bring claims against them under Section 1983, as that statute is meant to remedy deprivations of federal rights by persons acting under color of *state* law. *See* 42 U.S.C. § 1983; *Mack v. Warden Loretto FCI*, 839 F.3d 286, 302 (3d Cir. 2016). It is possible that some of Stroud's claims could be cognizable under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). The Court, however, need not make such a determination at this time because, even if *Bivens* remedies exist, Stroud's complaint fails to state any civil rights violations.

## II. STANDARD OF REVIEW

Courts are statutorily obligated to review, "as soon as practicable," unrepresented prisoner complaints targeting governmental entities, officers, or employees. *See* 28 U.S.C. § 1915A(a). One basis for dismissal at the screening stage is if the complaint "fails to state a claim upon which relief may be granted[.]" *Id.* § 1915A(b)(1). This language closely tracks Federal Rule of Civil Procedure 12(b)(6). Accordingly, courts apply the same standard to screening a *pro se* prisoner complaint for sufficiency under Section 1915A(b)(1) as they utilize when resolving a motion to dismiss under Rule 12(b)(6). *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 109-10 & n.11 (3d Cir. 2002); *O'Brien v. U.S. Fed. Gov't*,

763 F. App'x 157, 159 & n.5 (3d Cir. 2019) (*per curiam*) (nonprecedential); *cf. Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000).

In deciding a Rule 12(b)(6) motion to dismiss, courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996). The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff. *See Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008). In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted). At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in

4

original)). Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded. *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 681.

Because Stroud proceeds *pro se*, his pleadings are to be liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted). This is particularly true when the *pro se* litigant, like Stroud, is incarcerated. *See Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).

### III.   DISCUSSION

Upon review of Stroud's complaint, it is immediately apparent that his various claims lack necessary elements. The Court will briefly take each of his alleged constitutional torts in turn.

### A. State-Created Danger

Stroud's first two counts are labeled as "state created danger." (Doc. No. 1 ¶¶ 36-41.) To properly plead a constitutional tort claim for state-created danger, a plaintiff must allege four elements: "(1) the harm ultimately caused to the plaintiff was foreseeable and fairly direct; (2) the state-actor acted in willful disregard for the plaintiff's safety; (3) there was some relationship between the state and the plaintiff; and (4) the state-actor used his authority to create an opportunity for danger that otherwise would not have existed." *Phillips*, 515 F.3d at 235 (citations omitted). Stroud's complaint fails at the first element. He alleges that the Blackboxing incidents occurred in October and November 2021. Yet he does not identify any harm that has befallen him. Thus, while Defendants' purported actions—taken as true—may have created a danger for Stroud "that otherwise would not have existed," *id.*, Stroud has not alleged that they resulted in foreseeable and direct harm or, for that matter, any harm at all.[1]

---

[1] The Court is unaware of any case holding that being revealed as a sex offender to other prisoners, on its own, satisfies the "harm" element of the state-created danger paradigm. The Court further observes that, although Stroud seeks injunctive relief "enjoining and restraining defendants . . . from Blackboxing inmates purely due to their sex[-]offender designation," (Doc. 1 at 7), Stroud is no longer incarcerated at USP Lewisburg and thus his claims for injunctive relief are moot. *See Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003) ("An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims."); *see also Abdul-Akbar v. Watson*, 4 F.3d 195, 197 (3d Cir. 1993).

### B. Equal Protection

Stroud also claims that his treatment by USP Lewisburg officials violated his constitutional right to equal protection. As noted above, Stroud is suing federal officials, so his equal protection claims are grounded in the Fifth Amendment to the United States Constitution (rather than the Fourteenth).

The Fifth Amendment, unlike the Fourteenth, does not contain an express Equal Protection Clause, but the Supreme Court of the United States has "construed the Fifth Amendment to contain an equal protection guarantee." *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 316-17 (3d Cir. 2001) (citing *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 616 (1991)); *see also Davis v. Passman*, 442 U.S. 228, 234-35 (1979). Fifth Amendment equal protection claims are examined coextensively with Fourteenth Amendment equal protection jurisprudence. *Abdul-Akbar*, 239 F.3d at 317. To state an equal protection claim, a prisoner must allege "that he was treated differently than other similarly situated inmates, and that this different treatment was the result of intentional discrimination based on his membership in a protected class[.]" *Mack*, 839 F.3d at 305.

The flaw in Stroud's equal protection claims is obvious. He is contending that he was treated differently than other similarly situated, low-security inmates based upon his sex-offender designation. However, being designated a sex offender does not qualify as membership in a "protected class" for equal protection purposes, as

7

that designation is reserved for categories such as race, religion, or gender. *See id.*; *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (explaining that equal protection component of Due Process Clause of Fifth Amendment protects against unjustifiable disparate treatment based on standards such as race or religion); *Perry v. Pa. Dep't of Corr.*, 441 F. App'x 833, 835, 838 (3d Cir. 2011) (nonprecedential) (noting that sex-offender prisoner failed to plead membership in a protected class for equal protection claim).

### C. "Failure to Supervise"

Stroud includes a claim against the warden of USP Lewisburg labeled "failure to supervise." (*See* Doc. No. 1 ¶¶ 42-45.) This portion of his complaint fails to state a claim for several reasons. First, it appears that Stroud is attempting to assert vicarious liability on the warden. Stroud states that, because the warden "is responsible for the actions" occurring in his prison and "had to know or should [have] known about" the "illegal practice" of the prison bus crews but refused to "put an end to" it, he is liable for Stroud's wrongful treatment. (*Id.*) However, it is well settled that, for *Bivens* claims, liability cannot be predicated on the doctrine of *respondeat superior*. *See Ashcroft v. Iqbal*, 556. U.S. 662, 676 (2009). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* It is possible that Stroud is attempting to assert liability under a theory of "actual knowledge and acquiescence,"

8

*see Dooley*, 957 F.3d at 374 (describing personal involvement for Section 1983 claims), but his complaint alleges that the warden "had to know or should [have] known," not that he did know and acquiesced in the purportedly illegal activity.

Second, Stroud's complaint fails to state an underlying constitutional violation. As explained above, Stroud has not plausibly alleged a state-created danger or equal protection claim. Consequently, his "failure to supervise" claim is also deficient, as Stroud has not identified a violation of his civil rights of which the warden had actual knowledge and to which the warden acquiesced. For both of the foregoing reasons, Stroud's "failure to supervise" claim must be dismissed.

### D. Civil Conspiracy

Stroud's civil conspiracy claim likewise fails because his other allegations do not plausibly state constitutional infringements. To plead a civil rights violation for conspiracy, a plaintiff must allege that government actors "'reached an understanding' to deprive him of his constitutional" or federally protected rights. *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 293-95 (3d Cir. 2018) (citations omitted). Stroud has not set forth a plausible state-created danger or equal protection claim. Therefore, he cannot state a viable civil rights conspiracy claim, either. *See Clayworth v. Luzerne County*, 513 F. App'x 134, 138 (3d Cir. 2013) (nonprecedential) ("Thus, because [plaintiff] failed to establish an underlying violation of his constitutional rights, his [civil rights] conspiracy claim also fails.")

(citing *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 700 (3d Cir. 1993), *abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Township of Warrington*, 316 F.3d 392 (3d Cir. 2003)).

### E. Leave to Amend

Generally, "plaintiffs who file complaints subject to dismissal under [the Prison Litigation Reform Act] should receive leave to amend unless amendment would be inequitable or futile." *Grayson*, 293 F.3d at 114. Stroud's equal protection claims will be dismissed with prejudice because leave to amend would be futile. Stroud cannot plead that the discrimination he allegedly faced was based on his membership in a protected class. The Court will grant leave to amend for Stroud's state-created danger claims so that, if he is able, he can identify foreseeable and "fairly direct" harm that he has suffered. If Stroud can plausibly allege harm, he may be able to amend his pleadings to state claims for supervisory liability and civil conspiracy as well.

If Stroud chooses to file an amended complaint in conformity with this Memorandum, it should be a stand-alone document, complete in itself and without reference to any previous pleadings. The complaint should set forth his claims in short, concise, and plain statements, and in sequentially numbered paragraphs. It should name proper defendants, specify the offending actions taken by a particular

defendant, be signed, and indicate the nature of the relief sought. If Stroud does not timely amend his pleadings, his case will be closed.

## IV. CONCLUSION

Based on the foregoing, the Court will dismiss Stroud's complaint (Doc. No. 1) with and without prejudice pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted. An appropriate Order follows.

s/ Sylvia H. Rambo<br>United States District Judge

Dated: May 25, 2022