IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARCUS STROUD, | : | |
|     Plaintiff | : | |
| | : | No. 1:22-cv-0515 |
| v. | : | |
| | : | (Judge Rambo) |
| WARDEN USP LEWISBURG, | : | |
| *et al.*, | : | |
|     Defendants | : | |

<u>**MEMORANDUM**</u>

Plaintiff Marcus Stroud, who was previously incarcerated at the United States Penitentiary in Lewisburg, Pennsylvania (USP Lewisburg), initiated the above-captioned *pro se* action, purportedly under 42 U.S.C. § 1983. He asserts constitutional tort claims against the warden of USP Lewisburg and six unidentified USP Lewisburg correctional officers. In May 2022, the Court dismissed Stroud's complaint but granted him leave to amend. Stroud moves for reconsideration of that order. The Court will grant in part Stroud's motion for reconsideration.

**I. BACKGROUND**

Stroud filed the instant civil rights case in April 2022. (Doc. No. 1.) He alleged that, during prison transfers from FCI Loretto to USP Lewisburg and then from USP Lewisburg to MDC Brooklyn, he was handcuffed using a "Blackbox" mechanism, which is "a small black box [that] sits over the handcuffs restricting movement of the wrists, causing discomfort, and prevent[ing] an inmate from

picking the lock." (*Id.* ¶¶ 14-16, 22-25.) According to Stroud, of the nine total inmates on the bus from FCI Loretto to USP Lewisburg—all of whom were designated low- or minimum-security risk—only he and two other inmates were "Blackboxed," and this was specifically because they were sex offenders. (*Id.* ¶¶ 17-19, 25.) On the bus transfer from USP Lewisburg to MDC Brooklyn, Stroud claims that, of the twelve total inmates, nine were low-security prisoners and only two of those low-security inmates (Stroud and another sex offender) were Blackboxed. (*Id.* ¶¶ 22-25.)

Stroud alleges that the USP Lewisburg bus crew "conspired among themselves" to intentionally Blackbox the sex offenders so that their prior offenses would be exposed to the other prisoners on the bus. (*Id.* ¶¶ 37, 39.) Stroud maintains that these prison officials knew of "the danger and stigmatization sex offenders face while in prison" but chose to Blackbox and single out the sex offenders anyway. (*Id.* ¶¶ 38, 41.) Stroud avers that this practice of Blackboxing low-security sex offenders during transport to reveal their identities has been occurring at USP Lewisburg for "at least 6 months." (*Id.* ¶¶ 28, 43-44.)

Stroud claims that Defendants' actions constitute "state created danger," "failure to supervise," equal protection violations, and civil conspiracy. (*Id.* ¶¶ 36-56.) In his complaint, he attempted to bring these claims under 42 U.S.C. § 1983. (*Id.* ¶ 1.)

As the Court noted in its May 25, 2022 Memorandum, all Defendants are prison officials at USP Lewisburg, which is a federal facility. (*See* Doc. No. 10 at 3.) Stroud, therefore, cannot bring constitutional tort claims against them under Section 1983, as that statute is meant to remedy deprivations of federal rights by persons acting under color of *state* law. (*See id.* (citing 42 U.S.C. § 1983; *Mack v. Warden Loretto FCI*, 839 F.3d 286, 302 (3d Cir. 2016)).) The Court noted that, while it was possible that some of Stroud's claims might be cognizable under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), Stroud's complaint failed to state any civil rights violations, so an analysis of whether a *Bivens* remedy was available was unnecessary. (*Id.*)

The Court first analyzed Stroud's state-created danger claims. It found that Stroud's pleading fell short at the first element because he had not alleged that Defendants' actions had "resulted in foreseeable and direct harm or, for that matter, any harm at all." (*Id.* at 6.) The Court further noted the absence of any case law holding that being revealed as a sex offender to other prisoners, by itself, satisfies the "harm element" of the state-created danger paradigm. (*Id.* at 6 n.1.)

The Court then reviewed and dismissed Stroud's equal protection claim. The Court construed Stroud's undeveloped Fifth Amendment claim as asserting that he had been treated unfairly based on his status as a sex offender. (*See id.* at 7.) The Court observed, however, that a sex-offender designation does not qualify as

membership in a "protected class" for equal protection purposes. (*Id.* at 7-8 (citing, *inter alia*, *Perry v. Pa. Dep't of Corr.*, 441 F. App'x 833, 835, 838 (3d Cir. 2011) (nonprecedential) (noting that sex-offender prisoner failed to plead membership in a protected class for equal protection claim))).

Turning next to Stroud's "failure to supervise" claim, the Court determined that Stroud's complaint failed to state a claim against the warden of USP Lewisburg because the allegations sounded only in *respondeat superior*. (*Id.* at 8-9.) The Court further held that, because Stroud's complaint failed to plausibly state an underlying constitutional violation, his failure-to-supervise claim was also deficient, as Stroud had not identified a violation of his civil rights of which the warden had actual knowledge and to which the warden had acquiesced. (*Id.* at 9.)

Finally, as to Stroud's civil conspiracy claim, the Court found that—like his failure-to-supervise claim—Stroud had not plausibly stated a conspiracy claim because he had not identified an underlying constitutional violation. (*See id.* at 9-10 (citing *Clayworth v. Luzerne County*, 513 F. App'x 134, 138 (3d Cir. 2013) (nonprecedential) ("[B]ecause [plaintiff] failed to establish an underlying violation of his constitutional rights, his [civil rights] conspiracy claim also fails.")).)

Concluding that each of Stroud's claims was facially deficient in some manner, the Court dismissed Stroud's complaint but granted him leave to amend as

4

to all claims except his equal protection claim. (*See id.* at 10-11.) Stroud timely moved for reconsideration of that order. (Doc. No. 12.)[1]

## II. DISCUSSION

Stroud contends that all his claims should be permitted to go forward. He also submitted a proposed amended complaint. (Doc. No. 12-1.) That proposed amended complaint is nearly identical to his original complaint, although it adds a few additional factual allegations as well as an Eighth Amendment failure-to-protect claim against the unidentified bus crews. (*See id.* ¶¶ 52-59.) For the following reasons, the Court will grant in part Stroud's motion for reconsideration, but with a result that Stroud may not have anticipated. The Court will dismiss with prejudice Stroud's *Bivens* claims sounding in state-created danger, class-of-one equal protection, and failure to supervise, and will permit him to file an amended complaint limited to failure to protect and civil conspiracy.

### A. State-Created Danger

The Court begins with Stroud's state-created danger claims. Stroud's complaint fails to state a claim for relief for two independent reasons.

---

[1] Stroud cites Federal Rules of Civil Procedure 59(e) and 60(b) as the basis for his motion for reconsideration, but those provisions concern final—not interlocutory—orders. This Court's May 25, 2022 Order was not a final order and thus Rules 59(e) and 60(b) do not apply. The Court will instead construe Stroud's motion as one for reconsideration of an interlocutory order under Rule 54(b). *See Qazizadeh v. Pinnacle Health Sys.*, 214 F. Supp. 3d 292, 295 (M.D. Pa. 2016) (explaining different standards of review for reconsideration of an interlocutory order versus reconsideration of a final order).

1. **<u>No Harm Identified</u>**

Stroud's first two counts are labeled as "state created danger." (Doc. No. 1 ¶¶ 36-41.) To properly plead a constitutional tort claim for state-created danger, a plaintiff must allege four elements: "(1) the harm ultimately caused to the plaintiff was foreseeable and fairly direct; (2) the state-actor acted in willful disregard for the plaintiff's safety; (3) there was some relationship between the state and the plaintiff; and (4) the state-actor used his authority to create an opportunity for danger that otherwise would not have existed." *Phillips v. County of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008) (citations omitted). Stroud's complaint fails at the first element. He alleges that the Blackboxing incidents occurred in October and November 2021, yet he does not identify any harm that has befallen him. Thus, while Defendants' purported actions—taken as true—may have created danger for Stroud "that otherwise would not have existed," *id.*, Stroud has not alleged that they resulted in foreseeable and direct harm or, for that matter, any harm at all.

As previously explained, the Court is unaware of any case (persuasive or binding) holding that being revealed as a sex offender to other prisoners, on its own, satisfies the "harm" element of the state-created danger paradigm. (*See* Doc. No. 10 at 6 n.1.) Nor has Stroud identified any. Stroud instead argues that this Court should forge a new path and let him proceed on his novel claim. The Court declines this

invitation, as state-created danger cases hold local governments liable for discrete and substantial injuries suffered by its citizens, not for speculative or potential harm.

Stroud additionally contends that there are other state-created danger cases showing that rendering a person more vulnerable to injury is a type of "harm," so his state-created danger claims should go forward. (*See* Doc. No. 13 at 5-6.) Stroud, however, cites inapposite cases where concrete and substantial injuries had befallen the plaintiffs. (*See id.* at 6 (citing *Maxwell ex rel. Maxwell v. Sch. Dist. of Phila.*, 53 F. Supp. 2d 787 (E.D. Pa. 1999) (violence, sexual harassment, and rape); *Schieber v. City of Philadelphia*, 320 F.3d 409, 416 (3d Cir. 2003) (rape and murder); *Brown v. Dep't of Health Med. Servs. Training Inst.*, 318 F.3d 473, 478 (3d Cir. 2003) (death)).) Stroud argues that "being labeled a sex offender in the prison setting" is a "clear and recognized harmful effect," (*id.*), but once again he fails to tie his argument to any binding or persuasive state-created danger case. He then argues that "[t]he state-created danger theory should focus on preventing the state from placing people's lives in harm's way through [its] affirmative actions." (*Id.* at 7.) The state-created danger theory *does* do this, but it requires a plaintiff to suffer a cognizable injury before pursuing a remedy from the government.

    2.    **<u>Extension of *Bivens*</u>**

There is a second and ultimately more conclusive reason why Stroud cannot pursue his state-created danger claims against USP Lewisburg officials. As Stroud

7

concedes, (*see* Doc. No. 12-1 at 1), his lawsuit targets federal officials, so any constitutional tort claim he seeks to pursue must be cognizable under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Unfortunately for Stroud, neither the Supreme Court of the United States nor the United States Court of Appeals for the Third Circuit has recognized a *Bivens* claim for "state-created danger," and extensions of *Bivens* have become strongly disfavored.

In 1971, the Supreme Court concluded that, even absent statutory authorization, it would enforce a damages remedy allowing individuals to be compensated after experiencing violations of the prohibition against unreasonable searches and seizures contained in the Fourth Amendment. *See Bivens*, 403 U.S. at 397. Subsequently, the Court extended the *Bivens* cause of action in two cases involving other types of constitutional violations. First, in *Davis v. Passman*, 442 U.S. 228, 248-49 (1979), the Court concluded that the Fifth Amendment's Due Process Clause provided an implied damages remedy to an administrative assistant claiming that a Congressman had discriminated against her on the basis of gender. Next, the Court concluded that the Eighth Amendment's prohibition on cruel and unusual punishment provided a prisoner a cause of action for damages against federal prison officials who failed to provide adequate medical treatment. *See Carlson v. Green*, 446 U.S. 14, 19 (1980). "These three cases—*Bivens*, *Davis*, and

*Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Ziglar v. Abbasi*, 582 U.S. __, 137 S. Ct. 1843, 1855 (2017).

Over the years that followed, the Supreme Court has "consistently refused to expand *Bivens* actions beyond these three specific contexts." *See Mack v. Yost*, 968 F.3d 311, 318 (3d Cir. 2020). The Supreme Court has specifically noted that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Ziglar*, 137 S. Ct. at 1857. In *Ziglar*, the Court provided a "restrictive, two-step framework for courts to follow when analyzing *Bivens* claims." *Mack*, 968 F.3d at 317. First, the Court must determine if the case presents a "new context," *i.e.*, if it is "different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court." *Id.* (alteration in original) (quoting *Ziglar*, 137 S. Ct. at 1859). A *Bivens* claim "may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez v. Mesa*, 589 U.S. __, 140 S. Ct. 735, 743 (2020). If the case presents a new context, courts must then consider whether special factors counsel against extending the *Bivens* remedy and, if so, must reject the requested extension. *See Mack*, 968 F.3d at 317 (citing *Ziglar*, 137 S. Ct. at 1857).

Here, Stroud is clearly presenting a new context with his state-created danger claim. This claim has its origins in the Due Process Clause of the Fourteenth

9

Amendment and represents a discrete exception to the general rule that due process "does not impose an affirmative obligation on the state to protect its citizens." *See Phillips*, 515 F.3d at 235 (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195-96 (1989)). The Supreme Court plainly has never recognized a *Bivens* claim in such a context.

The second step is to determine whether special factors counsel against extending the *Bivens* remedy. The Supreme Court has clarified that this inquiry "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Ziglar*, 137 S. Ct. at 1857-58. If the court "ha[s] reason to pause before applying *Bivens* in a new context or to a new class of defendants," then special factors counseling hesitation exist. *Hernandez*, 140 S. Ct. at 743. There may be many special factors, but two are "particularly weighty: the availability of an alternative remedial structure and separation-of-powers concerns." *Mack*, 968 F.3d at 320 (internal quotation marks omitted).

As the Third Circuit noted in *Mack v. Yost*, the availability of the Bureau of Prison's administrative remedy program provides an alternative to a federal *Bivens* lawsuit here. *See id.* at 320-21. Through the administrative remedy process, federal prisoners "can alert the BOP to unconstitutional officer conduct and policies and prevent such constitutional violations from recurring." *Id.* at 321. Notably, for

Stroud, this is not a meaningless remedy because he largely complains not of previous physical injury but of unconstitutional and disparate treatment during his transfers. *See id.* Thus, because Stroud had access to at least "some redress," the Court finds—like in *Mack*—that the BOP's administrative remedy program offers a "convincing reason" to refrain from extending *Bivens*. *See id.* (citations omitted); *see also Ziglar*, 137 S. Ct. at 1858 ("[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action.").

The Court must also consider whether an expansion of *Bivens* would "improperly encroach upon other branches of government." *Id.* The gravamen of Stroud's claims concern BOP security decisions regarding prisoner restraint and transportation of inmates between federal facilities. These weighty decisions and policies are the exclusive purview of the executive branch which, through the BOP, applies its expertise to making such determinations to ensure the safety of prisoners and staff alike. *See, e.g.*, *Turner v. Safley*, 482 U.S. 78, 85 (1987) ("Prison administration is . . . a task that has been committed to the responsibility of [the legislative and executive] branches, and separation of powers concerns counsel a policy of judicial restraint."). As the *Mack* panel concluded, "judicial intervention in such administrative decisions would improperly encroach upon the executive's domain." *Mack*, 968 F.3d at 323. Moreover, because Stroud's claim is completely

11

novel, the Court must hesitate before extending *Bivens* to entire groups of cases in which federal prison officials would be forced to defend against personal liability claims brought against them by federal inmates. *See Mammana v. Barben*, 856 F. App'x 411, 415 (3d Cir. 2021) (nonprecedential) (citation omitted); *Ziglar*, 137 S. Ct. at 1858.

In sum, because there is no existing *Bivens* cause of action for a state-created danger claim, and because special factors counsel against an extension of *Bivens*, Stroud cannot pursue this constitutional tort claim against USP Lewisburg officials.

### B.  Equal Protection

Stroud maintains that his treatment by USP Lewisburg officials violated his constitutional right to equal protection under the Fifth Amendment. In his motion for reconsideration, Stroud contends that he wants to assert a "class of one" claim against prison officials for treating him differently than other similarly situated prisoners. (*See* Doc. No. 13 at 9-10.) Stroud, however, runs directly into the same obstacle that bars his state-created danger claims: there is no existing *Bivens* remedy for a class-of-one equal protection claim like the one he is asserting, and special factors exist that counsel against a *Bivens* extension.

In *Davis v. Passman*, the Supreme Court approved a *Bivens* cause of action for a claim of gender-based employment discrimination by a female employee against a Congressman. *See Davis*, 442 U.S. at 230-31. While Stroud's proposed

class-of-one equal protection claim also derives from the Fifth Amendment, it is markedly different than *Davis* and thus presents a new context. *See Hernandez*, 140 S. Ct. at 743; *Stile v. United States*, Civ. No. 16-3832 (RMB), 2019 WL 287072, at *5 (D.N.J. Jan. 22, 2019).

The Court need not repeat its prior analysis regarding whether special factors exist that counsel against a *Bivens* extension here. That is because the same reasoning counseling against extending *Bivens* to Stroud's state-created danger claim likewise applies to his class-of-one equal protection claim (as it is based on the same alleged federal prison-official conduct under the same factual circumstances). Consequently, because an extension of *Bivens* is unwarranted, Stroud's proposed class-of-one equal protection claim cannot move forward.

### C.   Failure to Supervise

In his original complaint, Stroud included a claim against the warden of USP Lewisburg labeled "failure to supervise." (*See* Doc. No. 1 ¶¶ 42-45.) In response to dismissal, Stroud realleges this claim in his proposed amended complaint, asserting that the warden "is responsible for the actions" occurring in his prison and that, because "the practice and custom [of Blackboxing sex offenders during transport] is so prevalent," the warden "knew about this abusive custom and acquiesced to the conduct which was ongoing for at least 6 months." (Doc. No. 12-1 ¶¶ 36-38.)

Stroud's proposed failure-to-supervise claim meets the same fate as his state-created danger and equal protection claims. This is plainly another new context for a *Bivens* claim. *See Shorter v. Samuels*, No. 3:16-cv-1973, 2019 WL 6492534, at *7 (M.D. Pa. Dec. 3, 2019) (Mannion, J.); *Longworth v. Mansukhani*, No. 5:19-CT-3199-FL, 2021 WL 4472902, at *4 (E.D.N.C. Sept. 29, 2021); *Ross v. Hayden*, No. 19-cv-01427-MEH, 2021 WL 810106, at *3 (D. Colo. Mar. 3, 2021). And, once again, the same reasons weighing against extending *Bivens* to Stroud's other constitutional claims likewise apply to his instant failure-to-supervise claim. This conclusion is bolstered by other district court decisions holding that a *Bivens* extension is not warranted for a failure-to-supervise claim. *See, e.g.*, *Shorter*, 2019 WL 6493534, at *7-8; *Ross*, 2021 WL 810106, at *3-4.

### D.     Proposed Failure to Protect Claims

Stroud desires to add claims against the two bus crews for "failure to protect" under the Eighth Amendment. He alleges that the officers' actions—Blackboxing him and thus exposing him to other prisoners as a sex offender—created a dangerous situation and a "very real probability of violence." (Doc. No. 12-1 ¶¶ 52-59.)

In *Bistrian v. Levi*, 912 F.3d 79, 90 (3d Cir. 2018) (*Bistrian II*), the Third Circuit held that "an inmate's claim that prison officials violated his [constitutional] rights by failing to protect him against a known risk of substantial harm does not present a new *Bivens* context." The *Bistrian II* panel, relying primarily on *Farmer*

*v. Brennan*, 511 U.S. 825 (1994), determined that Bistrian (the prisoner-plaintiff) was not presenting a new *Bivens* context with his failure-to-protect claim. *See Bistrian II*, 912 F.3d at 90-91.

Notably, both *Bistrian II* and *Farmer* involved *Bivens* claims premised on failure to protect a prisoner from inmate-on-inmate violence. *See id.* at 91 ("As in *Farmer*, Bistrian seeks a remedy against prison officials for their failure to protect him from prisoner-on-prisoner violence."). Thus, it is possible that Stroud is presenting a new context with his failure-to-protect claim regarding being exposed as a sex offender to other prisoners. Nevertheless, because it is not clear that Stroud's proposed Eighth Amendment claims present a new context, the Court will permit Stroud to assert these claims in his amended complaint.

### E. Civil Conspiracy

Stroud maintains that he is also pursuing a claim of civil conspiracy, but he does not identify what procedural vehicle he is using to raise this claim. It appears most likely that Stroud is asserting a conspiracy claim under 42 U.S.C. § 1985(3).

A Section 1985(3) claim of civil conspiracy to violate constitutional rights may be asserted against those acting under color of federal law. *Davis v. Samuels*, 962 F.3d 105, 115 (3d Cir. 2020). "Section 1985(3) permits an action to be brought by one injured by a conspiracy formed for the purpose of depriving, either directly or indirectly, any person . . . of the equal protection of the laws, or of equal privileges

15

and immunities under the laws." *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006) (internal quotation marks and citation omitted). To state such a claim, a plaintiff must plausibly allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Id.* (citation omitted). A plaintiff seeking to assert a Section 1985(3) claim "must allege both that the conspiracy was motivated by discriminatory animus against an identifiable class and that the discrimination against the identifiable class was invidious." *Id.* at 135.

In his complaint and proposed amended complaint, Stroud broadly alleges that "[t]he fact that both Bus Crew 1 and Bus Crew 2 engaged in the same practice shows the widespread agreement of the prison to engage in the separate treatment of sex offenders and place them in danger."[2] (Doc. No. 1 ¶ 54; Doc. No. 12-1 ¶ 48.) He avers that the six unidentified correctional officers "collectively conspired and acted in concert when placing the Blackbox" on him, (Doc. No. 1 ¶¶ 55-56; Doc. No. 12-

---

[2] The Court does not address at this juncture whether "sex offenders" qualify as a class who can seek Section 1985(3) protection. *See Farber*, 440 F.3d at 138-39 (discussing necessity of *invidious* discrimination and providing examples of types of class-based discrimination (*e.g.*, race or gender) that qualify as "irrational and odious" and are motivated by often "immutable characteristics" such that discrimination based on membership in that class can be considered "invidious" in nature).

16

1 ¶¶ 49-50), and—in his proposed amended complaint—that they "agreed to engage in this practice [to] deprive [him] of his constitutional rights." (Doc. No. 12-1 ¶ 51.)

Stroud's conspiracy claim, even as set forth in his proposed amended complaint, is deficient because his allegations are predominantly legal conclusions. To state a claim for conspiracy, a plaintiff must do more than recite talismanic phrases like "conspire" and "act in concert." *See Jutrowski v. Township of Riverdale*, 904 F.3d 280, 295 (3d Cir. 2018) (explaining that, to state a civil conspiracy claim, a plaintiff must demonstrate that defendants "somehow reached an understanding to deny [the plaintiff] his rights" (alteration in original)); *Adams v. Corr. Emergency Response Team*, 857 F. App'x 57, 61 (3d Cir. 2021) (nonprecedential) (explaining that, to state a Section 1985 conspiracy claim, a plaintiff must sufficiently allege "facts and circumstances" that "support the elements of the conspiracy" and show agreement between defendants to deprive a plaintiff of a constitutional right); *Stankowski v. Farley*, 251 F. App'x 743, 748 (3d Cir. 2007) (nonprecedential) (finding that "conclusory allegation" that defendants "conspired" against him fails to state a claim for civil conspiracy).

Stroud's "formulaic recitation of the elements" does not meet the pleading requirement for stating a Section 1985(3) conspiracy. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (explaining that courts must "disregard threadbare recitals of the

elements of a cause of action" (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012))). Stroud must plead facts and circumstances that, if true, would establish the elements of a conspiracy and show an agreement or understanding between the defendants to deny Stroud equal protection because he is a sex offender. Because neither Stroud's complaint nor his proposed amended complaint do so, Stroud—if he is able—must do more to plausibly state a claim for Section 1985(3) conspiracy if he wants to include such a claim in his amended complaint.

## IV. CONCLUSION

Based on the foregoing, the Court will grant in part Stroud's motion for reconsideration, but with a result that Stroud likely did not intend. The Court will dismiss with prejudice Stroud's *Bivens* claims for state-created danger, equal protection, and failure to supervise. Stroud may file an amended complaint—in conformity with this Memorandum—that sets forth his claims for failure to protect and civil conspiracy only. An appropriate Order follows.

s/ Sylvia H. Rambo<br>
United States District Judge

Dated: November 30, 2022