IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MARCUS STROUD,**<br>    **Plaintiff** | :   No. 1:22-CV-0515<br>:<br>:   (Judge Munley) |
| v. | : |
| **WARDEN USP-LEWISBURG,**<br>    **Defendant** | :<br>: |

FILED
SCRANTON

JAN 18 2024

PER _____
DEPUTY CLERK

### MEMORANDUM

Plaintiff Marcus Stroud initiated the above-captioned *pro se* civil rights action in 2022. He alleges that his Eighth Amendment rights were violated by multiple prison officials affiliated with the United States Penitentiary in Lewisburg, Pennsylvania (USP Lewisburg). Defendants move to dismiss Stroud's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) or alternatively for summary judgment pursuant to Federal Rule of Civil Procedure 56. The Court will grant in part and deny in part Defendants' motion to dismiss and will deny their motion for summary judgment.

I. **BACKGROUND**

Stroud is a convicted sex offender. (Doc. 17 ¶¶ 18, 24). The gravamen of his lawsuit is that, during prison transfers on two occasions in late 2021, six USP Lewisburg corrections officers restrained him (and other sex offenders) in a

specific manner to intentionally reveal the inmates' sex-offender status to other prisoners on the bus. (See generally Doc. 17).

Specifically, Stroud alleges that, during transfers from FCI Loretto to USP Lewisburg and then from USP Lewisburg to MDC Brooklyn, he was handcuffed using a "Blackbox" mechanism, which is a "small box[ that] sit[s] over handcuffs restricting movement of the wrists, causing discomfort, and preventing an inmate from picking the lock." (Id. ¶¶ 13-15, 21-24). According to Stroud, of the nine total inmates on the bus from FCI Loretto to USP Lewisburg—all of whom were designated low- or minimum-security risk—only he and two other inmates were Blackboxed, and this was specifically because they were sex offenders. (Id. ¶¶ 18-19.) On the bus transfer from USP Lewisburg to MDC Brooklyn, Stroud alleges that of the twelve total inmates, nine were low-security prisoners and only two of those low-security inmates (Stroud and another sex offender) were Blackboxed. (Id. ¶¶ 21-24.)

Stroud contends that the USP Lewisburg bus crews intentionally Blackbox sex offenders so that their offenses are exposed to the other prisoners on the bus. (Doc. 1 ¶¶ 37, 39).[1] He maintains that these prison officials knew of "the

---

[1] The court cites to Stroud's original complaint only to provide clarification as to his theory of liability. Forcing Stroud, who is incarcerated and proceeding *pro se*, to file a second amended complaint to incorporate these prior allegations (that were likely inadvertently omitted from his amended complaint) would be an unnecessary and inefficient use of judicial resources.

danger and stigmatization sex offenders face while in prison" but chose to Blackbox and single out the sex offenders anyway. (Id. ¶¶ 38, 41). Stroud avers that this practice of Blackboxing low-security sex offenders during transport to reveal their identities has been occurring at USP Lewisburg for "at least 6 months." (Doc. 17 ¶ 27).

Stroud initially raised a host of claims against the unidentified USP Lewisburg officers, including state created danger, failure to supervise, equal protection, and civil conspiracy. (Doc. 1 ¶¶ 36-56). He invoked 42 U.S.C. § 1983 in his original complaint as the basis for liability, (see id. ¶ 1), but as the court noted during its initial screening, all Defendants are prison officials at a federal facility and thus any claim for individual liability for constitutional violations must be brought under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). (See Doc. 10 at 3).

The court screened Stroud's complaint as required by 28 U.S.C. § 1915A and identified material pleading deficiencies with all his causes of action, dismissing most without prejudice. (See generally Docs. 10, 11; see also Doc. 15 at 3-5 (providing summary of initial Section 1915A screening)). The court determined that Stroud had failed to state any claim for relief but granted him leave to amend most of his claims. (See Doc. 10 at 6-11; Doc. 11 ¶¶ 2-3).

Stroud moved for reconsideration of the court's decision, arguing that all his claims should be allowed to proceed. (See generally Doc. 12). He simultaneously provided a proposed amended complaint, (Doc. 12-1), which added new Eighth Amendment "failure-to-protect" claims against the bus crews. (Id. ¶¶ 52-59).

The court granted in part Stroud's motion for reconsideration "but with a result that Stroud may not have anticipated." (Doc. 15 at 5). After performing a lengthy analysis regarding the viability of Stroud's Bivens claims for state created danger, equal protection, and failure to supervise, the court dismissed those claims with prejudice. (See id. at 5-14). Ultimately, the court found that such claims represented new contexts for Bivens liability and that extensions of Bivens under the circumstances of Stroud's case were unwarranted. (See id. at 7-14).

The court then addressed Stroud's proposed failure-to-protect claims. Relying on Bistrian v. Levi, 912 F.3d 79 (3d Cir. 2018) (Bistrian II), the court observed that the United States Court of Appeals for the Third Circuit has held that "an inmate's claim that prison officials violated his [constitutional] rights by failing to protect him against a known risk of substantial harm does not present a new Bivens context." (Doc. 15 at 14 (quoting Bistrian II, 912 F.3d at 90)). The court then provided the following caveat:

> Notably, both Bistrian II and Farmer involved Bivens claims premised on failure to protect a prisoner from inmate-on-inmate

4

> violence. See id. at 91 ("As in Farmer, Bistrian seeks a remedy against prison officials for their failure to protect him from prisoner-on-prisoner violence."). Thus, it is possible that Stroud is presenting a new context with his failure-to-protect claim regarding being exposed as a sex offender to other prisoners [without violence occurring]. Nevertheless, because it is not clear that Stroud's proposed Eighth Amendment claims present a new context, the Court will permit Stroud to assert these claims in his amended complaint.

(Id. at 15 (quoting Bistrian II, 912 F.3d at 91)). The court also reviewed and dismissed without prejudice Stroud's civil conspiracy claim that presumably invoked 42 U.S.C. § 1985(3), finding that Stroud had failed to allege a conspiracy with sufficient factual detail. (See Doc. 15 at 15-18).

The court concluded by permitting Stroud to file an amended complaint limited to his claims sounding in failure to protect and civil conspiracy. (Id. at 18). Stroud complied by filing a concise amended complaint, (Doc. 17), which is now the operative pleading. Stroud asserts Eighth Amendment failure-to-protect claims and Section 1985(3) civil conspiracy claims. (See id. ¶¶ 28-53). He seeks punitive damages and injunctive relief, as well as costs and attorney's fees. (See id. ¶ 1; id. at p.7 ("Prayer for Relief")).

The unidentified USP Lewisburg officers were eventually identified through subpoena. (See Docs. 19-21, 24-28). Defendants now move to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) or alternatively for summary judgment under Rule 56 for failure to exhaust

5

administrative remedies. (Doc. 32). That motion is fully briefed and ripe for disposition.

## II.  STANDARD OF REVIEW

In deciding a Rule 12(b)(6) motion to dismiss, courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see Nami v. Fauver, 82 F.3d 63, 66 (3d Cir. 1996). The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff. See Phillips v. County of Allegheny, 515 F.3d 224, 229 (3d Cir. 2008). In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents. Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993)).

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry. See Connelly v. Lane Const. Corp., 809 F.3d 780, 787 (3d Cir. 2016) (internal citations, quotation marks, and footnote omitted). At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state

a claim." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009) (alterations in original)). Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded. Id. (quoting Iqbal, 556 U.S. at 679). Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief." Id. (quoting Iqbal, 556 U.S. at 679). Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 681.

Because Stroud proceeds *pro se*, his pleadings are to be liberally construed and his amended complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted). This is particularly true when the *pro se* litigant, like Stroud, is incarcerated. See Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).

## III.   DISCUSSION

Defendants assert that Stroud's complaint must be dismissed because a Bivens remedy does not exist for his novel Eighth Amendment failure-to-protect claims and that, even if a Bivens remedy existed, Defendants are shielded from

liability by qualified immunity.[2] They alternatively argue that because Stroud failed to fully exhaust any of his claims, he has procedurally defaulted those claims so summary judgment must be granted in their favor.

The court disagrees with Defendants' contention that Stroud failed to exhaust his administrative remedies. However, because permitting <u>Bivens</u> liability under the facts of this case would result in an unwarranted extension of the <u>Bivens</u> remedy, the court is constrained to dismiss Stroud's Eighth Amendment failure-to-protect claims insofar as they seek monetary damages. Stroud's claims for prospective injunctive relief, however, remain viable and withstand Defendants' motion to dismiss.

### A.  Administrative Exhaustion

The Prison Litigation Reform Act of 1995 (PLRA), 42 U.S.C. § 1997e *et seq.*, requires prisoners to exhaust available administrative remedies before suing prison officials for alleged constitutional violations. Proper exhaustion is mandatory, even if the inmate is seeking relief—like monetary damages—that cannot be granted by the administrative system. <u>See</u> 42 U.S.C. § 1997e(a); <u>Ross v. Blake</u>, 578 U.S. 632, 639, 642 (2016) (explaining that only "available"

---

[2] Defendants also challenge the sufficiency of Stroud's Section 1985(3) conspiracy claim. Stroud concedes that he cannot state a Section 1985(3) civil conspiracy claim and does not oppose dismissal of this claim. (<u>See</u> Doc. 35 at 12, 16). The court will therefore dismiss this claim without further discussion.

remedies must be exhausted). The exhaustion process a prisoner must follow is governed by the contours of the prison grievance system in effect where the inmate is incarcerated. Woodford v. Ngo, 548 U.S. 81, 85 (2006).

The Bureau of Prisons (BOP) has a specific internal system through which federal prisoners can request review of nearly any aspect of their imprisonment. See generally 28 C.F.R. §§ 542.10-.19. That process begins with an informal request to staff and progresses to formal review by the warden, appeal with the Regional Director, and—ultimately—final appeal to the General Counsel. See id. §§ 542.13-.15.

Defendants maintain that Stroud failed to seek final review with the General Counsel (sometimes referred to as "central office") for any relevant administrative remedy involving the at-issue events, and therefore his claims are procedurally defaulted. (Doc. 34 at 24-26). Stroud counters that he diligently attempted to utilize the administrative remedy process and was stymied at every turn by the BOP's failure to respond to his filings. (Doc. 35 at 12-15). The court agrees with Stroud and finds that the BOP's repeated failure to comply with its own regulations rendered administrative relief unavailable.

Stroud contends (with supporting, undisputed evidence (see Doc. 35-1; Doc. 35-2 at 2)), that he filed at least two BP-8 forms to attempt to informally resolve his claims concerning Defendants intentionally "outing" sex offenders by

9

Blackboxing them during prison transfer. According to Stroud, the first BP-8 he submitted to his unit team counselor was lost. (See Doc. 35-1 ¶¶ 3-4). The second BP-8 he filed was never answered. (Id. ¶ 5).

Stroud then filed a BP-9 form, the first step in the BOP's formal remedy process. (Id. ¶ 8). This BP-9 was never answered either. (Id. ¶¶ 8-9, 11). Stroud sent multiple follow-up email requests to staff regarding the prison's failure to respond to his BP-8 and BP-9 forms, again receiving no response. (Id. ¶¶ 6, 9, 11; Doc. 35-2 at 2).

Stroud then sent a BP-10 form to the Northeast Regional Office, the first level of appeal. (Id. ¶ 10). That remedy was rejected on procedural grounds for purportedly failing to submit a BP-9, even though Stroud specifically informed the Regional Director in the BP-10 that he had filed a BP-9 but received no response. (Id. ¶¶ 11, 14).

Defendants contend that because Stroud did not seek final review with the General Counsel, he failed to exhaust his claim. To the contrary, because the BOP failed to even respond to Stroud's informal resolution BP-8 forms, Stroud exhausted his administrative remedies without even needing to continue with the formal remedy process. See Millhouse v. Heath, 815 F. App'x 628, 631 (3d Cir. 2020) (nonprecedential) (finding that inmate properly discharged exhaustion requirement when BOP official "failed to respond to [the prisoner's] requests for

10

informal resolution," and further noting that "the regulatory presumption that a non-response acts as a denial, see 28 C.F.R. § 542.18," does not apply to informal resolution).[3]

Thus, because the undisputed evidence of record demonstrates that Stroud's unit team counselor never responded to his informal resolution requests, Stroud properly discharged the exhaustion requirement as to his Eighth Amendment failure-to-protect claims. Defendants' motion for summary judgment on this issue will be denied.

### B. Failure-to-Protect Bivens Claims

Nevertheless, Stroud's demand for monetary damages fails because there is no Bivens remedy for his Eighth Amendment failure-to-protect claims.

In 1971, the Supreme Court held that, "even absent statutory authorization, it would enforce a damages remedy" to compensate individuals who experienced violations by federal officers of the Fourth Amendment's prohibition against unreasonable searches and seizures. Ziglar v. Abbasi, 582 U.S. 120, 130-31 (2017); Bivens, 403 U.S. at 397. Subsequently, the Court extended the Bivens cause of action in two cases involving other types of constitutional violations. First, in Davis v. Passman, 442 U.S. 228, 248-49 (1979), the Court concluded

---

[3] Although Millhouse v. Heath is a nonprecedential opinion, it is directly on point and its rationale is both persuasive and supported by binding Third Circuit precedent.

11

that the Fifth Amendment's Due Process Clause provided an implied damages remedy to an administrative assistant claiming that a Congressman had discriminated against her based on gender. Next, the Court concluded that the Eighth Amendment's prohibition on cruel and unusual punishment implied a cause of action for damages against federal prison officials who failed to provide adequate medical treatment to inmates. See Carlson v. Green, 446 U.S. 14, 19 (1980). "These three cases—Bivens, Davis, and Carlson—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." Abbasi, 582 U.S. at 131.

Over the years that followed, the Supreme Court has "consistently refused to expand Bivens actions beyond these three specific contexts." Mack v. Yost, 968 F.3d 311, 318 (3d Cir. 2020). The Supreme Court has specifically noted that "expanding the Bivens remedy is now a 'disfavored' judicial activity." Abbasi, 582 U.S. at 135 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).

In Ziglar v. Abbasi, the Supreme Court provided a "restrictive, two-step framework for courts to follow when analyzing Bivens claims." Mack, 968 F.3d at 317. First, the court must determine whether the case presents a "new context," i.e., if it is "different in a meaningful way from previous Bivens cases decided by [the Supreme] Court." Id. (alteration in original) (quoting Abbasi, 582 U.S. at 139). The Supreme Court has defined "new context" broadly, explaining that "a

modest [Bivens] extension is still an extension." Id. (quoting Abassi, 582 U.S. at 147). A Bivens claim "may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." Hernandez v. Mesa, 589 U.S. ___, 140 S. Ct. 735, 743 (2020).

If the case presents a new context, courts must then consider whether special factors counsel against extending the Bivens remedy. See Mack, 968 F.3d at 317 (citing Abbasi, 582 U.S. at 136). If so, it must reject the requested extension. See id. (citing Hernandez, 140 S. Ct. at 743). The Supreme Court has clarified that this inquiry "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." Abbasi, 582 U.S. at 136. If the court "ha[s] reason to pause before applying Bivens in a new context or to a new class of defendants," then special factors counseling hesitation exist. Hernandez, 140 S. Ct. at 743. There may be many special factors, but two are "particularly weighty: the availability of an alternative remedial structure and separation-of-powers concerns." Mack, 968 F.3d at 320 (internal quotation marks omitted).

The parties in the case at bar mainly spar over whether Stroud's Eighth Amendment failure-to-protect claims present a new Bivens context. That

13

question, however, has already been answered by the United States Court of Appeals for the Third Circuit.

In Dongarra v. Smith, 27 F.4th 174 (3d Cir. 2022)—a similar case involving a prison official branding an inmate as a sex offender and putting that inmate at risk of assault by other prisoners—the Third Circuit unambiguously held that "the Supreme Court has never recognized a damages remedy for an assault that never happened." Id. at 178, 180-81. Stroud concedes that his case similarly seeks damages for being put at risk of an assault that never occurred, acknowledging that he "did not allege any distinct secondary risks" like emotional or psychological harms. (See Doc. 35 at 9). This is relevant because the Dongarra panel intimated in *dicta* that if the plaintiff had alleged failure to protect against non-physical harms, it may have affected the panel's "new context" determination. See Dongarra, 27 F.4th at 180-81 (explaining that plaintiff never alleged deliberate indifference to risk of "emotional or psychological harms," only indifference to potential assault by other prisoners that never occurred). Thus, like Dongarra, Stroud's case presents a new Bivens context. Id. at 181.

The second step under Abbasi asks whether special factors counsel against extending the Bivens remedy. Like in Dongarra, a Bivens extension is unwarranted here.

As the Third Circuit has noted, the availability of the BOP's administrative remedy program provides an alternative to a federal Bivens lawsuit in circumstances like those Stroud alleges.  See Mack, 968 F.3d at 320-21; Dongarra, 27 F.4th at 181.  Through the administrative remedy process, federal prisoners "can alert the BOP to unconstitutional officer conduct and policies and prevent such constitutional violations from recurring."  Mack, 968 F.3d at 321.  Although Stroud's personal experience with the administrative remedy process was lackluster, that process generally works as designed and allows inmates to seek redress through administrative channels.  Thus, because inmates in similar circumstances as Stroud have access to at least "some redress," the Court finds—as in Mack—that the BOP's administrative remedy program offers a "convincing reason" to refrain from extending Bivens in cases like Stroud's.  See id. (citations omitted); see also Abbasi, 582 U.S. at 137 ("[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new Bivens cause of action.").

Additionally, as noted in Dongarra, Stroud may seek an injunction to end the alleged ongoing constitutional violation.  See Dongarra, 27 F.4th at 180, 181.  Stroud seeks injunctive relief in his amended complaint, (see Doc. 17 ¶ 1; id. at p.7), thus providing an additional alternative remedy.

The court must also consider whether an expansion of <u>Bivens</u> would "improperly encroach upon other branches of government." <u>Mack</u>, 968 F.3d at 321. The gravamen of Stroud's claims concern BOP security decisions regarding prisoner restraint and transportation of inmates between federal facilities. These weighty decisions and policies are the exclusive purview of the executive branch which, through the BOP, applies its expertise to making such determinations to ensure the safety of prisoners and staff alike. <u>See, e.g.</u>, <u>Turner v. Safley</u>, 482 U.S. 78, 85 (1987) ("Prison administration is . . . a task that has been committed to the responsibility of [the legislative and executive] branches, and separation of powers concerns counsel a policy of judicial restraint."). As the <u>Mack</u> panel concluded, "judicial intervention in such administrative decisions would improperly encroach upon the executive's domain." <u>Mack</u>, 968 F.3d at 323.

For all these reasons, the court finds that an extension of <u>Bivens</u> is unwarranted under the circumstances of this case. Stroud's claims for monetary damages, therefore, must be dismissed. <u>See, e.g.</u>, <u>Shreiber v. Mastrogiovanni</u>, 214 F.3d 148, 150, 155 (3d Cir. 2000) (affirming dismissal of case seeking

compensatory and punitive damages under Bivens after finding that no Bivens remedy existed).[4]

### C.   Injunctive Relief

Stroud maintains that, although the events complained of occurred in 2021, there is a distinct likelihood that he will be subjected to the same transfer conditions in the immediate future. He thus invokes the "capable of repetition" doctrine to avoid a determination that his equitable claims are moot. (See Doc. 35 at 5-6). That doctrine provides "a narrow exception to the mootness principle and is limited to cases presenting two elements: '(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, *and* (2) there [is] a reasonable likelihood that the same complaining party would be subjected to the same action again.'" Abdul-Akbar v. Watson, 4 F.3d 195, 206 (3d Cir. 1993) (emphasis and alteration in original) (quoting Weinstein v. Bradford, 423 U.S. 147, 149 (1975)).

Stroud asserts that he is on the waitlist for the BOP's "Sex Offender Treatment Program – Residential" and that this program is not offered at FCI

---

[4] Because Stroud's damages claims must be dismissed based on the absence of a Bivens remedy, it is unnecessary to address Defendants' qualified immunity argument. See Hill v. Borough of Kutztown, 455 F.3d 225, 244 (3d Cir. 2006) (explaining that "the defense of qualified immunity is available only for damages claims—not for claims requesting prospective injunctive relief"); see also Morse v. Frederick, 551 U.S. 393, 400 n.1 (2007) (noting that qualified immunity "shields public officials from money damages only" and thus would not affect plaintiff's claims for "declaratory and injunctive relief").

Danbury, his current facility of incarceration. (See Doc. 35 at 6). He maintains that because USP Lewisburg is a "transit hub" for prison transfers, it is likely if not certain that he will again encounter a USP Lewisburg bus crew with at least some of the same Defendants when he is transferred out of FCI Danbury to participate in the residential treatment program. (Id.)

Defendants do not discuss Stroud's allegations regarding prospective injunctive relief or his "capable of repetition" argument. The court, therefore, is constrained to conclude—at least at the Rule 12(b)(6) stage—that Stroud's claim for injunctive relief cannot be dismissed as moot.

### D.  Leave to Amend

Generally, "*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile." Grayson v. Mayview State Hosp., 293 F.3d 103, 114 (3d Cir. 2002). Stroud has already amended his pleadings once. Further leave to amend will be denied as futile. As explained above, Stroud lacks a Bivens remedy for his Eighth Amendment failure-to-protect claims seeking monetary damages. Moreover, he concedes that his civil conspiracy claims must be dismissed.

## IV. CONCLUSION

Based on the foregoing, the Court will dismiss with prejudice Stroud's Bivens and civil conspiracy claims for failure to state a claim upon which relief may be granted. This case will proceed on Stroud's request for prospective injunctive relief with respect to his Eighth Amendment failure-to-protect claims. An appropriate Order follows.

Date: 1/18/24

BY THE COURT:

JUDGE JULIA K. MUNLEY
United States District Court